## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————— ) | |
| PEOPLE FOR THE ETHICAL ) | |
| TREATMENT OF ANIMALS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-1818 (ABJ) |
| ) | |
| NATIONAL INSTITUTES OF HEALTH ) | |
| DEPARTMENT OF HEALTH AND ) | |
| HUMAN SERVICES, ) | |
| ) | |
| Defendant. ) | |
| ————————————————) | |

## MEMORANDUM OPINION

Plaintiff People for the Ethical Treatment of Animals ("PETA") brings this action against

defendant National Institutes of Health ("NIH") under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552 (2006), and the Administrative Procedure Act ("APA"), 5 U.S.C. §

706(2) (2006). Plaintiff seeks documents concerning all NIH investigations into complaints

regarding three specifically named researchers at the Auburn University Scott-Ritchey Research

Center ("Auburn") in Alabama.  Plaintiff also seeks a confidentiality agreement between Auburn

and NIH, relating to materials and information regarding an investigation concerning one of the

three named individuals.  NIH gave a Glomar response to these requests, refusing to confirm or

deny whether it had responsive records.   Additionally, plaintiff requests access to records

regarding the NIH Office of Laboratory Animal Welfare ("OLAW") files concerning Auburn.

Defendant provided plaintiff with some documents in response to this request but withheld all or

portions of documents pursuant to certain FOIA Exemptions.

Plaintiff seeks a declaratory judgment finding that defendant violated FOIA by failing to disclose all non-exempt responsive records.  Compl. at 11 (prayer for relief) [Dkt. #1].  Plaintiff additionally asks this Court to declare that defendant has violated the APA by requiring Auburn University to enter into a confidentiality agreement that plaintiff contends is contrary to state law.  *Id.*  Defendant filed a motion to dismiss in part and for summary judgment.  [Dkt. # 13].  Plaintiff filed a cross-motion for partial summary judgment.  [Dkt. # 15].  For the reasons below, the Court will deny defendant's motion in part with respect to the motion to dismiss and grant in part with respect to the motion for summary judgment.  The Court will deny plaintiff's cross-motion for partial summary judgment.

## I.        BACKGROUND

Plaintiff PETA is a non-profit organization that advocates for animal rights.  Compl. ¶ 3.  As a part of its advocacy efforts, PETA relies on FOIA requests to uncover information concerning the abuse of animals used in laboratory research, which it then disseminates to the public.  Goodman Decl. ¶¶ 4–5.  Defendant NIH is a federal agency within the Department of Health and Human Services ("HHS").  Compl. ¶ 4.  Auburn University is a public university in Alabama that receives federal funding from NIH for research on laboratory animals.  *Id.* ¶ 9.  Institutions that conduct animal research with NIH funds must adhere to the Public Health Service's Policy on Human Care and Use of Laboratory Animals ("PHS Policy"), administered by OLAW.  *Id.* ¶ 8.

The complaint alleges that an Auburn University employee contacted NIH on September 27, 2005, to report the "misappropriation of NIH funds" by certain Auburn University researchers in connection with their work on a five-year NIH research grant.  *Id.* ¶ 10.  The employee alleged that the researchers were misapplying funds from the NIH grant to perform

other procedures for private clients.  *Id.*  Subsequently, PETA filed the three FOIA requests underlying this action in order to discover whether NIH had taken any action with respect to these allegations, including whether NIH had conducted investigations into the three individual researchers PETA believes are responsible for violations of NIH Policy and the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131 (2006).  Compl. ¶¶ 11, 16, 21.

### A. Factual Background

Plaintiff PETA made three separate FOIA requests that give rise to this action.  On February 28, 2006, PETA submitted a FOIA request (the "First Request") to NIH seeking "copies of all OLAW files concerning Auburn University."  Def.'s Statement of Material Facts ("Def.'s SMF") ¶ 10.  On November 22 and December 28, 2006, NIH responded to the First Request, stating that 384 responsive pages had been located and that certain information had been withheld from disclosure.  *Id.*  NIH produced forty-seven responsive pages in full or with redactions but withheld 323 pages in full.  Maloney Decl. ¶ 11.  PETA filed a timely administrative appeal, alleging that NIH had failed to provide any reference to the FOIA exemptions upon which it relied to justify nondisclosure.  Ex. 6 to Maloney Decl.  The agency issued a final decision on July 12, 2010, explaining for the first time the basis of its withholdings under FOIA Exemptions 4, 6, 7(C), and 7(D).  Def.'s SMF ¶ 13.

While PETA's appeal of its First Request was still pending, PETA filed a second FOIA request (the "Second Request") on July 25, 2007, seeking copies of information and other materials related to all NIH investigations into complaints filed from 2005 to present about the three specifically named individuals at Auburn.  Maloney Decl. ¶ 4.  On February 20, 2008, NIH responded to the Second Request, asserting that it could neither confirm nor deny the existence of responsive records and informing PETA of its right to appeal the agency's decision within

thirty days.  Def.'s SMF ¶¶ 2–3.  NIH further stated that even if the requested records existed, they would be exempt from disclosure under FOIA Exemption 6.  *Id.*  PETA did not file a timely administrative appeal; instead, PETA waited six months to appeal NIH's February 20, 2008 response letter.  *Id.* ¶¶ 4–5.

On August 21, 2008, plaintiff challenged the February 20, 2008 response letter, reiterated its Second Request for records, and additionally requested (the "Third Request") a copy of the confidentiality agreement between Auburn University and NIH regarding the alleged investigation of one of the three individuals cited in the Second Request.  *Id.* ¶ 5.  On August 26, 2008, NIH responded that PETA's appeal of the February 20, 2008 response letter was untimely, but that the agency was in receipt of its Third Request and would respond shortly.  *Id.* ¶ 6.  Three days later, defendant responded to the Third Request, stating that the agency could neither confirm nor deny the existence of responsive records.  *Id.* ¶ 7.  Defendant also asserted that, even if the requested records existed, they would be exempt from disclosure under FOIA Exemption 6.  *Id.* ¶ 7.

Plaintiff timely appealed, and defendant issued a final decision on July 12, 2010, upholding its earlier decision to neither confirm nor deny the existence of responsive records and further stated that, even if the requested records existed, they would be exempt from disclosure under FOIA Exemption 6 or 7(C).  *Id.* ¶¶ 8–9.  Although defendant acknowledged in its final decision that plaintiff's appeal was timely only with respect to its Third Request, the agency nevertheless offered "a substantive response to the appeal of both matters."   Ex. 2 to Maloney Decl.

**B. The Lawsuit Before This Court**

On October 27, 2010, PETA filed this action seeking to compel disclosure of records responsive to its FOIA requests.  Count I of the complaint alleges that NIH has "no statutory basis" under FOIA for redacting or withholding records responsive to its First Request. Compl. ¶ 25.  Count II alleges that NIH has "no statutory basis" under FOIA to "refus[e] to process PETA's [Second Request and Third Request] for information concerning investigations of particular recipients of federal funding, or to refuse to disclose the information requested by those requests."  *Id.* ¶ 26.  Count III alleges that NIH violated the APA by requiring "Auburn University to enter into a 'confidentiality agreement' that purportedly bars the University from disclosing records to PETA under the Alabama Open Records Act."  *Id.* ¶ 27.

On March 10, 2011, NIH filed a motion to dismiss in part and for summary judgment. Defendant moved to dismiss Count II of the complaint in part, which concerns the Second Request made in July 2007, on the grounds that plaintiff failed to file a timely appeal and therefore did not exhaust administrative remedies.  Def.'s Mem. in Supp. of Mot. to Dismiss in Part and for Summ. J. ("Def.'s Mem.") at 3–8 [Dkt. #13].  Defendant also moved to dismiss Count III of the complaint, the APA claim, on the grounds that APA review is "only available when there is no other remedy."  *Id.* at 2; *accord id.* at 30–35.

PETA cross-moved for partial summary judgment [Dkt. # 15] on April 29, 2011.  In its memorandum, plaintiff informed the Court that it is now "challenging only the government's assertion of a 'Glomar' response and the withholding of the 'confidentiality agreement' it required from Auburn University, in refusing to process PETA's July 25, 2007 and August 21, 2008 requests."  Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. and Opp. to Def.'s Mot. ("Pl.'s Mem.") at 2 n.1.  [Dkt. # 15].  Plaintiff also did not respond to defendant's arguments with

respect to Count I or Count III in its opposition to defendant's motion for summary judgment. As such, the Court will treat Count I and III as conceded and will dismiss these claims without prejudice. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). Count II, which alleges that defendant violated FOIA by giving a Glomar response to the Second and Third FOIA requests, is the only claim still at issue.

## II.   STANDARD OF REVIEW

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979). However, a plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. DOJ*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010), quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

In any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). However, where a plaintiff has not provided evidence that an agency acted in bad faith,

"a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.  The district court reviews the agency's action de novo, and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B) (2006); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III.   ANALYSIS

The purpose of FOIA is to require the release of government records upon request and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by the release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential.")  The Supreme Court has instructed that FOIA exemptions are to be "narrowly construed."  *Abramson*, 456 U.S. at 630.

To prevail in a typical FOIA action, an agency must satisfy two elements.  First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate."  *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), citing *Oglesby*, 920 F.2d at 68.  Such agency affidavits

attesting to a reasonable search "are afforded a presumption of good faith," *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), and "can be rebutted only 'with evidence that the agency's search was not made in good faith,'" *id.*, quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).  Second, an agency must show that "materials that are withheld [] fall within a FOIA statutory exemption."  *Leadership Conference on Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.C. Cir. 2005).

However, there are certain times when an agency may properly respond to a FOIA request without searching for responsive records at all.  This is known as a Glomar response and it allows an agency to "refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception."  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007), quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).  To show that a Glomar response is appropriate, the agency must explain why it can neither confirm nor deny the existence of responsive records.  *See Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (requiring the agency "to provide a public affidavit explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records").  This inquiry is not based on the actual content of the documents but on whether the potential harm created by revealing the existence of the documents is protected by a FOIA exemption.  *See Wolf*, 473 F.3d at 374 ("In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases.").

## A.  PETA's Failure to Timely Appeal Denial of Its Second Request Does Not Bar the Court's Consideration of Its Claim.

Defendant moves to dismiss Count II with respect to the Second Request because it claims that plaintiff did not timely appeal NIH's denial of the request.  Def.'s Mem. at 4–8.  As a

result, defendant argues that the Court should dismiss for failure to exhaust its administrative remedies. *Id.* The Court finds that under the applicable case law in this Circuit, plaintiff's failure to timely appeal the denial does not bar consideration of the Second Request.

As the D.C. Circuit noted in *Wilbur v. CIA*, although "FOIA's administrative scheme 'favors treating failure to exhaust [administrative remedies] as a bar to judicial review,'" 355 F.3d 675, 677 (D.C. Cir. 2004), quoting *Hildago v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003), "exhaustion is a prudential consideration rather than a jurisdictional prerequisite," *id.* Consequently, where judicial review does not undermine "the purposes and policies underlying the exhaustion requirement, namely, to prevent premature interference with agency process, to give the parties and the courts benefit of agency's experience and expertise[,] and to compile an adequate record for review," a district court is "not precluded . . . from deciding the merits of [the] FOIA claim notwithstanding [plaintiff's] failure to comply with [an] appeal deadline." *Id.*

In *Wilbur*, the court noted that the plaintiff "did not bypass the administrative review process but pursued it to its end; he was simply late (albeit four years late)." *Id.* In response, the CIA, which was free to refuse his appeal, chose to process it and issued a final opinion affirming the agency's prior determination. *Id.* Consequently, the court concluded that judicial review was appropriate. This case provides a situation similar to the one in *Wilbur*. Here, PETA did not attempt to bypass the administrative review process; instead, it reiterated its requests in a document sent to NIH six months later. Def.'s SMF ¶ 5. NIH then processed that complaint and responded to those requests. Ex. 2 to Maloney Decl. (noting that, although the appeal "was not timely with respect to the request for the investigative records themselves," NIH will nonetheless provide "a substantive response to the appeal of both matters"). As a result, this Court will review PETA's Second Request because there are no prudential considerations that would

militate in favor of dismissal.  Because this is the only grounds for dismissal that has not yet been conceded by plaintiff, the Court will deny defendant's motion [Dkt. # 13] with respect to its argument that Count II should be dismissed for failure to exhaust.

### B. NIH Properly Submitted a Glomar Response to PETA's Second and Third FOIA Requests.

Defendant contends that it can neither confirm nor deny the existence of records responsive to plaintiff's Second and Third Requests because acknowledging the existence of such records would, in and of itself, disclose information otherwise protected by Exemptions 7(C) and 6.  Cornell Decl. ¶¶ 4–10; Def.'s Mem. at 8–9 ("NIH averred that being required to acknowledge whether it had such records was a clearly unwarranted invasion of the personal privacy of the individuals named in plaintiff's two FOIA requests.").  Given the agency's Glomar response, the Court must determine whether revealing the existence of documents related to an NIH investigation into the three named individuals or whether revealing the existence of a confidentiality agreement between Auburn and NIH regarding one of the three individuals would constitute an "invasion of personal privacy" under either Exemption 6 or 7(C).

FOIA Exemption 7(C) exempts documents compiled for law enforcement that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7).  Because this is a lower standard than Exemption 6, which requires a "*clearly* unwarranted" invasion of privacy, *id*. 552(b)(6), the Court will first address Exemption 7(C).  In order for particular records to qualify for this exemption, the agency must first demonstrate that the documents were compiled for law enforcement purposes.  *See Rural Housing Alliance v. U.S. Dept. of Agriculture*, 498 F.2d 73, 80 (D.C. Cir. 1974).[1]  This Circuit has consistently held that,

---

[1]    NIH submits that the requested documents were "compiled for law enforcement purposes" because "the records concern investigations of alleged animal research or Animal

where a FOIA request for law enforcement records invokes the privacy interests of any third party mentioned in those records (including investigators, suspects, witnesses, and informants), the exemption applies unless there is an overriding public interest in disclosure.  *See Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Lewis v. DOJ*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009).

      1.   <u>There is a legitimate privacy interest at stake in this case</u>.

Here, defendant made a Glomar response to plaintiff's Second and Third FOIA requests, stating that it neither "confirmed nor denied the existence of responsive records."  Cornell Decl. ¶ 10.  So, the question the Court must resolve at this point is not whether the documents need to be produced but whether merely acknowledging their existence invades an interest that the FOIA exemptions were designed to protect.   Plaintiff seeks all materials concerning NIH's investigations into three individuals, including a confidential agreement about an alleged investigation.  There is no question that a response from the agency acknowledging the existence of the records and processing the FOIA requests further would confirm that those three individuals were being or had been investigated.  This confirmation goes to the heart of the privacy interest that Exemption 7(C) was designed to protect.  *See Nation Magazine*, 71 F.3d at 894 n.8 ("[A] Glomar response is appropriate where an acknowledgement that records exist would provide the requester with the very information the exemption is designed to protect; that is, whether an individuals has been the target of a law enforcement investigation.")

Plaintiff argues first that the Glomar response is not appropriate here because a full FOIA response would not invade a *personal* privacy interest because the information "would bear only on whether [the three individuals] were the subjects of an investigation concerning their

---

Welfare Act violations and includes information provided by whistleblowers." Def.'s Mem. at 25–26, quoting Maloney Decl. ¶¶ 27, 29 (internal quotation marks omitted).  Plaintiff does not dispute that the records were compiled for law enforcement purposes.

*professional* conduct." Pl.'s Mem. at 29.[2]   But plaintiff mischaracterizes the nature of the privacy interest that has been asserted in this case.  This Circuit has recognized that a member of the public has a privacy interest in information that might suggest that the individual was the target of a law enforcement investigation.  *See, e.g.*, *Nation Magazine*, 71 F.3d at 894 ("noting that "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation"); *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990) (finding that "Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity,'"); quoting *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984); *Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856, 864 (D.C. Cir. 1981) ("There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an . . . investigation"), quoting *Baez v. DOJ*, 647 F.2d 1328, 1338 (D.C. Cir. 1980).  None of these cases make a distinction between whether the alleged investigation concerns an individual's personal or professional conduct – what matters is that there is a privacy interest in a person's identity being associated with the investigation.  If the Court were to accept plaintiff's theory that a person never has a personal privacy interest in investigations into their professional conduct, it would mean that no target of a white collar criminal grand jury investigation would have a privacy interest in that fact, which cannot be true.

---

2       Plaintiff blends its arguments that the documents are not protected by either Exemption 6 and Exemption 7(C), but that approach dilutes Congress' clear directive in the FOIA statute that law enforcement materials are presumptively exempt if their disclosure "could reasonably be expected" to involve an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b); *Graff v. FBI*, No. 09-2047, 2011 WL 5401928, at *7 (D.D.C. Nov. 9, 2011).

Plaintiff relies on several cases that it suggests stand for the proposition that the privacy interest in Exemption 7(C) does not apply to information regarding professional or business activities.  Pl.'s Mem. at 30, citing *Wash. Post v. HHS*, 690 F.2d 252, 262 (D.C. Cir. 1982); *Sims v. CIA*, 642 F.2d 562, 574 (D.C. Cir. 1980); *Cohen v. EPA*, 575 F. Supp. 425, 429 (D.D.C. 1983). But plaintiff overstates the reach of these holdings.  While they recognize that "[t]he privacy exemption does not apply to information regarding professional or business activities," *Cohen*, 575 F. Supp. at 429, that is not the nature of the privacy interest that is at stake in this case.  The privacy interest here concerns being identified as a target of a law enforcement investigation, and because plaintiff has requested documents that bear directly on that issue, there is no question that the requested information falls squarely within the category of documents that Exemption 7(C) aims to protect.

Plaintiff next contends that the revelation of the existence of an investigation into the three individuals would not invade a privacy interest because the fact that the researchers are the subject of an NIH investigation is already publicly known.  Pl.'s Mem. at 29–31.  But plaintiff has failed to point to anything indicating the *government*, as opposed to some other organization or source, has acknowledged the existence of investigations.  And even if it had, the Supreme Court has explained that the fact that some information may be publicly available from other sources does not mean that FOIA's privacy exemptions cease to apply.  *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500 (1994) ("An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form."); *see also Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 12 (D.D.C. 2009) ("Plaintiff's argument is foreclosed by a

long line of cases recognizing that individuals maintain an interest in their privacy even where some information is known about them publicly.").[3]

As evidence that the existence of investigations is publicly known, plaintiff cites its own complaint submitted to NIH asking that NIH investigate the researchers in question.  Pl.'s Mem. at 30, citing Ex. W to Pl.'s Mem.  Contrary to plaintiff's suggestion, this document does not establish the fact that an investigation is underway, even if NIH has a policy that it "will" investigate allegations of non-compliance with animal care rules, Ex. D to Pl.'s Mem. at 19.

Plaintiff also directs the Court to exhibits submitted with its motion for summary judgment and states that "USDA has already released voluminous documents demonstrating that these three researchers are the subject of alleged violations of the animal welfare policy."  Pl.'s Mem. at 34.  Specifically, plaintiff points to Exhibit R, a letter from Dr. Holland to the USDA which expresses concern over the "negligent and often cruel treatment of animals."  Ex. R. to Pl.'s Mem.  While this letter addressed the same subject matter of the alleged investigation and names the three individuals referenced in plaintiff's FOIA requests, it cannot be said that Dr. Holland's letter confirms as a matter of public record that these three people are the subject of an NIH investigation.[4]  There is no indication that this document was disseminated beyond the

---

3       The cases that plaintiff cites on page 31 of its motion for partial summary judgment that state that an individual's privacy interest is diminished when the information sought has already been publicly disclosed concern circumstances where the *government* itself has disclosed the information.  Pl.'s Mem. at 31, citing *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 620 (D.C. Cir. 2011); *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 66, 72 (D.D.C. 2010); *Detroit Free Press, Inc. v. DOJ*, 73 F.3d 93, 97 (6th Cir. 1996).  All of the documents that plaintiff relies on here to show that the investigations are publicly known originated from PETA itself or from other third parties but, importantly, not from the government.  Therefore, these cases are inapplicable.

4       The fact that plaintiff may have deduced the identities of individuals whose names and identifying information have been withheld or that their identities have been previously disclosed does not diminish their privacy interests.  *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990).

intended recipient of the letter.  Similarly, plaintiff relies on Exhibit JJ, which is PETA's 53-page

complaint to the USDA.  Ex. JJ to Pl.'s Mem.   Again, the fact that complaints have been made

public does not mean that the question of whether these individuals are now the subject of an

active NIH investigation has been publicly answered.  Plaintiff also cites Exhibit Y, which is a

non-authenticated interoffice memo that plaintiff claims originated from USDA.  Ex. Y to Pl.'s

Mem.  The memo notes that USDA inspections found the allegations in Complaint # 06-305

(which, according to paragraph 16 of the Goodman Declaration, is PETA's complaint) to be

partially valid.  But it cannot be said that a non-authenticated interoffice memo is tantamount to

public acknowledgment of the existence of an investigation relating to the three named

individuals.  The same is true for the document in which plaintiff claims that Auburn confirmed

that NIH conducted an investigation in a letter to PETA.  Ex. FF to Pl.'s Mem.  This is not an

official acknowledgment by NIH that there is an investigation.  The letter is, at most, speculation

on Auburn's behalf about a process in which it may or may not have been involved.  Thus, none

of the documents plaintiff has provided to the Court establishes that the investigators are the

subject of a NIH investigation.[5]  The Court finds that there is a significant privacy interest here

that would be invaded by the mere acknowledgement of the existence of the requested records.[6]

---

Furthermore, plaintiff has the burden of "pointing to specific information in the public domain
that appears to duplicate that being withheld."  *Davis v. DOJ*, 968 F.2d 1276, 1279 (D.C. Cir.
1992) (internal citation and quotation marks omitted).  For the reasons discussed above, plaintiff
has failed to meet that burden in this case.

5       Plaintiff also cites exhibits showing that it is no secret that the three individuals are
involved in animal research work, but that is not the question presented by this case.  Pl.'s Mem.
at 32, citing *e.g.*, Ex. N to Pl.'s Mem. and Goodman Decl. ¶¶ 8–9.  Rather, the question the Court
must resolve is whether, if the agency gave anything more than a Glomar response, it would
invade the interest the exemption is designed to protect.

6       Plaintiff argues that the only privacy interest that defendant has advanced is that
"individuals who engage in or who are associated with animal research are frequently the target

2.  <u>Plaintiff has failed to identify any public interest that would overcome the recognized privacy interest protected in Exemption 7(C).</u>

The Court next must weigh the public interest in disclosure against the legitimate privacy interest it has found.  Where a legitimate privacy interest exists, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest."  *Boyd v. DOJ*, 475 F.3d 381, 387 (D.C. Cir. 2007), quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (internal quotation marks omitted).  The Supreme Court has determined that the only relevant public interest for purposes of Exemption 7(C) is "the citizens' right to be informed about what their government is up to."  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (internal quotation marks omitted).  In determining whether to disclose a document, a court must weigh "the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny."  *Id.* at 772, quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  *Id.* at 773.  Moreover, courts in this Circuit have consistently held that where an individual seeks law enforcement records that implicate the privacy interests of a third party, the requester bears the burden of asserting the public interest at

---

of harassment and threats, and times actual acts of violence."  Pl.'s Opp. at 32, quoting Def.'s Mem. at 21.  Plaintiff contends that this privacy interest is not legitimate because defendant has failed to produce evidence that these individuals have ever been the target of harassment and threats.  *Id.* at 33.     But the Court's ruling that a privacy interest exists here does not rest on the fact that there is a potential for harassment of threats; it is grounded in the fact that these individuals have a privacy interest in not being identified as the targets of law enforcement investigations.  *See* Maloney Decl. ¶ 10.

play.  *See, e.g.*, *Boyd*, 475 F.3d at 387; *Lewis*, 609 F. Supp. 2d at 84; *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009).

Plaintiff asserts that there is a strong public interest in knowing "whether those who conduct research on animals are treating them humanely" and points to the fact that Congress has enacted two laws on the subject as support for this point.  Pl.'s Mem. at 37–38, citing the Animal Welfare Act, 7 U.S.C. § 2131, and the Health Research Extension Act, 42 U.S.C. § 289(d).  Even if plaintiff is correct that that there is great public interest in knowing whether animals have been treated humanely, that concern does not allows citizens to know "what their *government* is up to."  *Reporters Comm.*, 489 U.S. at 773 (emphasis added).  As the Supreme Court has explained, "FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed."  *Id*. at 744.  Here, the release of the information plaintiff has requested would reveal nothing about the government's own conduct, as opposed to the conduct of individual researchers or recipients of government funding.  *Nation Magazine*, 71 F.3d at 896 (D.C. Cir. 1995).[7]

Plaintiff also contends that the public has an interest in "ensuring that federal taxpayer dollars are not misused."  Pl.'s Mem. at 38.  But plaintiff's FOIA request does not seek documents that would shed light on that issue.  Instead, plaintiff seeks information about whether NIH investigated three particular individuals for violations of the Animal Welfare Act at an

---

[7]     Furthermore, the Court notes that the government did not give a *Glomar* response to plaintiff's FOIA request dated February 28, 2006 requesting "copies of all OLAW files concerning Auburn University."  Plaintiff received documents from defendant as a result of this request that address "the agency's performance of its statutory duties."  *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), quoting *Fed. Labor Relations Auth.*, 510 U.S. at 497 (internal quotation marks omitted).  So, to the extent that plaintiff has asserted a valid public interest in knowing whether and how NIH is performing its mission, there is a colorable argument that that interest has been served.

educational institution that receives federal grant money.  Plaintiff's FOIA request does not align with the public interest it now asserts.

Because plaintiff has failed to identify any public interest that would overcome the recognized privacy interest protected in Exemption 7(C), the Court concludes that defendant's Glomar response was proper.  Because the Glomar response was proper under Exemption 7(C), the Court need not consider Exemption 6.

## CONCLUSION

Because defendant met its obligations under FOIA, the Court will deny in part defendant's motion to dismiss and grant in part defendant's motion for summary judgment [Dkt. # 13].  The Court will deny plaintiff's cross motion for partial summary judgment [Dkt. # 15].  Accordingly, Count I and III will be dismissed without prejudice, and judgment for the defendant will be entered on Count II.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  April 10, 2012