UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
PEOPLE FOR THE ETHICAL      )
TREATMENT OF ANIMALS,       )
                                            )
          Plaintiff,           )
                                            )
   v.                                      )   Civil Action No. 10-1818 (ABJ)
                                            )
NATIONAL INSTITUTES OF HEALTH, )
DEPARTMENT OF HEALTH AND    )
HUMAN SERVICES,                )
                                            )
          Defendant.          )
_____)

## MEMORANDUM OPINION AND ORDER

People for the Ethical Treatment of Animals ("PETA") has filed an application for an award of attorneys' fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E). Plaintiff seeks an award of $219,967.07 in attorneys' fees and $7,273.21 in costs, for a total of $227,240.28. Defendant National Institutes of Health ("NIH") maintains that plaintiff is neither eligible for nor entitled to a fee award under FOIA, and that the amount plaintiff seeks is unreasonable.

The Court finds that plaintiff is eligible for and entitled to a fee award under FOIA. But given the very narrow relief plaintiff obtained in this case, the Court finds that ten percent of the amount claimed would be a reasonable award. The Court grants plaintiff's application and awards plaintiff a total of $22,724.03 in attorneys' fees and costs.

# BACKGROUND

## I. Factual Background

This case concerned three FOIA requests PETA made to NIH regarding alleged violations of animal welfare laws at Auburn University, a public university in Alabama that receives federal funding from NIH for research on laboratory animals. *PETA v. NIH*, 853 F. Supp. 2d 146, 150 (D.D.C. 2012); *aff'd in part and vacated in part*, 745 F.3d 535 (D.C. Cir. 2014).[1] The complaint alleges that on September 27, 2005, an Auburn University employee contacted NIH to report the "misappropriation of NIH funds" by certain Auburn University researchers in connection with their work on a five-year NIH research grant. *Id.* PETA sent three FOIA requests to defendant in order to discover whether defendant had taken any action with respect to those allegations. *Id.*

PETA submitted its first FOIA request on February 28, 2006, seeking "copies of all [Office of Laboratory Animal Welfare][2] files concerning Auburn University." Ex. 3 to Decl. of Carol Maloney [Dkt. #13-2] (attached to Def.'s Mot. to Dismiss in Part and for Summ. J.) (the "First Request") at 11. Defendant produced some documents in response to the First Request, but withheld or redacted others. *PETA*, 853 F. Supp. 2d at 150.

Plaintiff states that on August 30, 2006, six months after it submitted the First Request, it sent a complaint to the U.S. Department of Agriculture ("USDA") and to defendant "concerning an eight-month long undercover investigation it had conducted" at Auburn University. Pl.'s Appl. at 2; *see also* Ex. A to Pl.'s Appl. [Dkt. # 39-1] (the "August 2006 Letter"). The August 2006

---

1  The facts of the underlying case are set forth in the Court's memorandum opinion, *PETA v. NIH*, 853 F. Supp. 2d at 149–51.

2  This office within NIH is responsible for investigating alleged violations of animal welfare laws by institutions that receive funding from the agency. Pl.'s Appl. for Attys' Fees & Costs [Dkt. # 39] ("Pl.'s Appl.") at 8–9 n.1; Def.'s Mem. in Opp. to Pl.'s Appl. [Dkt. # 42] ("Def.'s Opp.") at 4.

2

Letter, which alleged violations of animal welfare laws and misuse of federal funds at Auburn University, was addressed to the USDA with a copy to Dr. Elias Zerhouni, then-director of NIH. August 2006 Letter at 1, 6; Pl.'s Appl. at 5.

PETA submitted a second FOIA request on July 25, 2007, seeking "copies of all official investigative reports, preliminary notes, testimonies, memos, meeting minutes, phone conversations, emails and other materials related to all National Institutes of Health (NIH) investigations into complaints filed in 2005–present" regarding two NIH grant recipients and one colleague at Auburn University. Ex. B to Pl.'s Appl. [Dkt. # 39-2] (the "Second Request"). The Second Request did not specifically mention the August 2006 Letter, *id.*, but the August 2006 Letter contained accusations about the three researchers named in the Second Request. *See* August 2006 Letter at 1–6.

On September 7, 2007, PETA sent a request to Auburn University under the Alabama Open Records Act seeking access to records regarding investigations into surgeries performed by the three researchers. Compl. ¶ 15; Ex. BB to Pl.'s Mot. for Partial Summ. J. [Dkt. # 15-27]. After producing some documents, the university informed plaintiff that it could not comply with plaintiff's request because "Auburn University has a signed confidentiality agreement with NIH relating to materials and information." Compl. ¶ 17; Ex. CC to Pl.'s Mot. for Partial Summ. J. [Dkt. # 15-28] at 2.

On August 21, 2008, after learning about the alleged confidentiality agreement, PETA submitted a third FOIA request to defendant, repeating the Second Request and seeking "[c]opies of any signed confidentiality agreement between Auburn University and NIH relating to materials and information with regard to an investigation into the research of" one of the NIH grant recipients "and colleagues." Ex. GG to Pl.'s Mot. for Partial Summ. J. [Dkt. # 15-32] at 1 (the "Third

3

Request"). Like the Second Request, the Third Request did not specifically mention the August 2006 Letter. Third Request.

In response to the Second and Third Requests, NIH issued *Glomar* responses, refusing to confirm or deny the existence of any responsive records on the grounds that to do so would constitute an invasion of personal privacy protected by FOIA Exemptions 6 and 7(C). Compl. ¶¶ 18, 21, 23; *see also* Ex. 2 to Decl. of Carol Maloney [Dkt. # 13-2] at 7–10.

## II.    Procedural Background

PETA filed suit on October 27, 2010, seeking a declaratory judgment that NIH violated FOIA by failing to disclose all non-exempt responsive records in responding to its FOIA requests and that NIH violated the Administrative Procedure Act ("APA") by requiring Auburn University to enter into a confidentiality agreement that plaintiff contended was contrary to state law. *PETA*, 853 F. Supp. 2d at 149; Compl. at 11 (prayer for relief).

### A.    PETA's Claims

The first FOIA count challenged defendant's redacting or withholding records responsive to the First Request. Compl. ¶ 25. Count II alleged that "[t]here is no statutory basis for NIH's wholesale refusal to process PETA's [Second and Third Requests] for information concerning investigations of particular recipients of federal funding, or to refuse to disclose the information requested by those requests." *Id.* ¶ 26. And Count III objected under the APA to defendant's alleged confidentiality agreement with Auburn University. *Id.* ¶ 27. Plaintiff additionally sought to compel disclosure of records responsive to the FOIA requests, and an order requiring defendant to rescind the confidentiality agreement with Auburn University. *Id.* at 11 (prayer for relief).

### B.    The Parties' Dispositive Motions

On March 10, 2011, defendant filed a motion to dismiss the complaint in part and for summary judgment. Def.'s Mot. to Dismiss in Part and for Summ. J. [Dkt. # 13]. On April 29,

4

2011, plaintiff opposed the motion to dismiss and moved for partial summary judgment. Pl.'s Mot. for Partial Summ. J. [Dkt. # 15]. Plaintiff's motion "challeng[ed] only the government's assertion of a 'Glomar' response and the withholding of the 'confidentiality agreement'." Pl.'s Opp. & Mem. in Supp. of Cross-Mot. for Partial Summ. J. [Dkt. #15] at 2 n.1. It did not respond to defendant's arguments with respect to Counts I or III. *PETA*, 853 F. Supp. 2d at 151.

After the case had been narrowed in that fashion, this Court issued a memorandum opinion on April 10, 2012. *PETA*, 853 F. Supp. 2d 146. It treated Counts I and III as conceded, dismissing those claims without prejudice, and granted summary judgment for NIH on Count II. *Id.* at 151, 159. Plaintiff appealed. Notice of Appeal [Dkt. # 28].

### C.     The D.C. Circuit's Ruling

The D.C. Circuit summarily affirmed the decision on Counts I and III. Order (Nov. 2, 2012) [Dkt. # 30] ("Summary Affirmance Order"). As to Count II, the D.C. Circuit affirmed the Court's grant of summary judgment in part and vacated it in part, and remanded for a limited search. *PETA*, 745 F.3d at 541–45.

The D.C. Circuit made four findings as to Count II, three of which were in favor of defendant and one of which was in favor of plaintiff. *Id.* The Court agreed that NIH could assert a *Glomar* response with respect to: (1) "any documents that would confirm the existence of an investigation into the three named researchers;" (2) any "documents showing that the agency received complaints about the researchers but declined to conduct an investigation in response;" and (3) copies of any confidentiality agreement relating to any investigation of the named researchers. *Id.* at 544–45.

But the D.C. Circuit also held that there "exists a . . . category of responsive documents beyond those that would necessarily reveal an investigation of the three researchers: documents showing that NIH responded to complaints about the three researchers by conducting an

5

investigation that did not target the researchers themselves." *Id.* at 544. It noted that PETA's "request presupposes a complaint filed against the named researchers," but held that, "[i]n view of the duty to construe FOIA requests liberally," the Second Request "encompasses documents relating to *any* ensuing investigation." *Id.* at 544–45. The Court further held that a *Glomar* response was not warranted as to "documents showing that NIH responded to complaints about the three researchers by conducting an investigation that did not target the researchers themselves." *Id.* It remanded with instructions that defendant "search for any documents showing that, in response to complaints filed against the named researchers, the agency conducted an investigation other than one targeting the researchers," and held that on remand, NIH may "issue a narrowed *Glomar* response for any documents revealing whether the agency investigated the researchers themselves." *Id.* at 544.

### D.     Post-Remand Search

In response to the D.C. Circuit's ruling, NIH performed a search "for any documents showing that, in response to complaints filed against the named researchers, the agency conducted an investigation other than one targeting the researchers." Decl. of Susan R. Cornell [Dkt. # 39-6] ("Cornell Decl.") ¶ 3. The agency determined that it had no record of ever having received the August 2006 Letter, so it conducted no investigation and had no responsive documents. *See id.* ¶¶ 4–8.

## III.    Application for Attorneys' Fees

On December 4, 2014, PETA filed an application for attorneys' fees, Pl.'s Appl., seeking $219,967.07 in attorneys' fees and $7,273.21 in costs, totaling $227,240.28.[3] Pl.'s Reply Mem. in Supp. of its Pet. for an Award of Attys' Fees & Costs [Dkt. # 44] ("Pl.'s Reply") at 15–16 n.7.

---

3      Defendant opposed the application on February 27, 2015, Def.'s Opp., and plaintiff replied on April 13, 2015.

Plaintiff asserts that the fee request does not reflect any time spent litigating Counts I or III. *Id.* at 8.  In addition, it claims that the fee request reflects a 25% reduction in plaintiff's fees and costs to reflect the fact that "PETA did not prevail on the part of the *Glomar* rationale that the agency relied on to neither confirm nor deny some of the non-existent records."  Pl.'s Appl. at 27 (emphasis removed); *see also* Decl. of Katherine A. Meyer [Dkt. # 39-9] ("First Meyer Decl.") ¶ 8.

## ANALYSIS

FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  In this Circuit, a plaintiff "must satisfy two requirements" in order to be awarded fees:  it must be "eligible for fees" and it must be "entitled to fees."  *See, e.g.*, *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014).  "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees. . . . If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees."  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011), citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006).

**I.     PETA is Eligible for a Fee Award.**

A plaintiff has "substantially prevailed" in a FOIA action, and become eligible for a fee award under the statute, if it "obtained relief through either – (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).

PETA alleges that it is eligible to recover attorneys' fees under subsection (I) because it obtained relief from the D.C. Circuit's opinion, and under subsection (II) because of NIH's

7

"dramatic shift in position" verifying that it had not received the August 2006 Letter and had no responsive records. Pl.'s Appl. at 10. NIH counters that PETA did not substantially prevail because it obtained only "meager relief . . . in the D.C. Circuit, which resulted in no release of information." Def.'s Opp. at 15. The Court finds that PETA obtained relief through the D.C. Circuit's opinion because the Circuit Court ordered NIH to search its records for a category of documents that fell outside the FOIA exemption.

A plaintiff "substantially prevail[s]" under subsection (I) if a court order "constitutes judicial relief on the merits resulting in a 'court-ordered change in the legal relationship between the plaintiff and the defendant.'" *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 194 (D.C. Cir. 2007), quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001); *see also Davy v. CIA*, 456 F.3d 162, 165 (D.C. Cir. 2006) (holding that the plaintiff substantially prevailed because "the order changed the legal relationship between [the plaintiff] and the defendant" and the plaintiff "was awarded some relief on the merits of his claim") (alteration in original) (internal quotation marks and citation omitted). A court order that changes the legal relationship between the parties is one that requires a party "to do what the law required – something that it had theretofore been unwilling to do." *Campaign for Responsible Transplantation*, 511 F.3d at 196; *see also Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005) (a plaintiff substantially prevails if the court order "requir[ed] some action . . . by the defendant") (alteration in original), quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493–94 (D.C. Cir. 2003).

At the outset, the Court notes that the D.C. Circuit certainly did not award plaintiff all of the relief it sought. The Circuit Court summarily affirmed this Court's decision with respect to

8

Counts I and III. Summary Affirmance Order. And it only awarded plaintiff relief on a narrow portion of Count II.

Count II alleged that "[t]here is no statutory basis for NIH's wholesale refusal to process PETA's . . . requests for information *concerning investigations of particular recipients of federal funding*, or to refuse to disclose the information requested by those requests." Compl. ¶ 26 (emphasis added). The D.C. Circuit rejected the argument that PETA was entitled to information about investigations into the three researchers, which the Court characterized as the "heartland" of responsive documents. *See PETA*, 745 F.3d at 541, 544. But it did grant plaintiff a narrow victory by reading the Second Request as also seeking "documents showing that NIH responded to complaints about the three researchers by conducting an investigation that did not target the researchers themselves." *Id.* at 544. Furthermore, it held:

> Because there exists a category of responsive documents for which a *Glomar* response would be unwarranted, NIH's assertion of a blanket *Glomar* response to the second request cannot be sustained. . . . On remand, NIH must search for any documents showing that, in response to complaints filed against the named researchers, the agency conducted an investigation other than one targeting the researchers. But NIH still may issue a narrowed *Glomar* response for any documents revealing whether the agency investigated the researchers themselves.

*Id.* at 545.

NIH argues that this relief is not substantial within the meaning of the statute because PETA only received a "small measure of success." Def.'s Opp. at 18; *see id.* at 15, citing *Mobley v. DHS*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012) ("[I]f a plaintiff obtains only one small piece of the relief it seeks in its complaint, . . . calling such prevalence 'substantial' is clearly incorrect[;] . . . a FOIA plaintiff must obtain the essential elements of the relief that it seeks in its complaint in order to substantially prevail").

9

While the Court agrees that the sum total of plaintiff's victory in this case was small, the test is not merely the size of the relief obtained but whether plaintiff obtained some judicial relief on the merits that resulted in a "change in the legal relationship" between the parties. *See Campaign for Reasonable Transplantation*, 511 F.3d at 194; *see also Elec. Privacy Info. Ctr. v. U.S. DHS*, 999 F. Supp. 2d 61, 67 (D.D.C. 2013) ("a FOIA requester can still 'substantially prevail' even when it obtains less-than-full relief"), citing *Judicial Watch*, 470 F.3d at 371. Indeed, the degree of plaintiff's success is relevant to the size of reasonable fees, not to its eligibility for a fee award. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989).

The Court finds that the D.C. Circuit's order changed the legal relationship between PETA and NIH, and it resulted in further action on the agency's part. While the *Glomar* response to the Second Request as it concerned the three researchers was "fully warranted," the Circuit Court also held that the request "broadly construed, encompasse[d] documents relating to *any* ensuing investigation," and documents responsive to that broader category could be withheld only if they "reveal[ed] whether the agency investigated the researchers themselves." *PETA*, 745 F.3d at 544–45. Thus, if the agency had responsive documents that fell within the broader request, it would have been required to release them to PETA. The fact that it did not have responsive documents does not negate the fact that the D.C. Circuit's ruling "changed the legal relationship" between PETA and NIH. *Davy v. CIA*, 456 F.3d at 165 (internal quotation marks omitted).[4]

---

4   This case is unlike other cases involving an order to conduct a search without more, which some courts have held does not constitute judicial relief on the merits. *See Oil, Chem. and Atomic Workers Int'l v. Dep't of Energy*, 288 F.3d 452, 458 (D.C. Cir. 2002) (holding that an order for the government to "complete its record review in 60 days" was a procedural ruling, not judicial relief on the merits, because even after the order was issued, the government "still had no obligation" turn over documents). Here, the Circuit Court ordered the broader search, which may uncover "responsive documents for which a *Glomar* response would be unwarranted." 745 F.3d at 545.

10

The Court therefore finds that plaintiff obtained relief on the merits through a judicial order, and is thus eligible for an award of attorneys' fees.

## II. PETA is Entitled to a Fee Award.

If a plaintiff is "eligible" for a fee award, the court next determines whether the plaintiff also is "entitled" an award. *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 820 F. Supp. 2d 39, 45 (D.D.C. 2011). The issue of entitlement is left to the court's discretion. *Morley v. CIA*, 719 F.3d 689, 691 (D.C. Cir. 2013) (Kavanaugh, J., concurring). In analyzing this issue, courts consider four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law. *See, e.g.*, *id.* at 690. None of the factors are dispositive, although "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

The Court finds that the public benefit factor is neutral, the commercial benefit and personal interest factors weigh in favor of plaintiff, and the reasonableness factor weighs in favor of defendant. In an exercise of its discretion and in consideration of the record in this case, the Court finds that plaintiff is eligible for a modest award of attorneys' fees.

### A. Public Benefit Derived from the Case

To assess the public benefit derived from the case, the Court must consider "both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy v. CIA*, 550 F.3d at 1159. The public benefit factor weighs in favor of granting attorneys' fees "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C.

11

Cir. 1995). Courts "evaluate the specific documents at issue in the case at hand" in order to determine the public benefit derived from the case. *Id.*

PETA argues that there is a public interest in learning about how NIH processes FOIA requests concerning animal welfare violations, and that its lawsuit benefitted the public by "bringing the government into compliance with the law." Pl.'s Appl. at 17, quoting *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C. Cir. 1977) (emphasis removed). NIH argues that any public benefit is "minimal" because it only conducted a limited search on remand, and found no responsive documents. Def.'s Opp. at 23.

With respect to "the effect of the litigation for which fees are requested," *Davy*, 550 F.3d at 1159, the Court finds that this prong favors defendant. No documents were produced and the litigation did not in fact generate any information about how NIH responds to animal welfare complaints or the way it processes FOIA requests. Since nothing was produced and no information was gleaned, there was nothing to "add to the fund of information that citizens may use in making vital political choices." *Cotton*, 63 F.3d at 1120.

As for "the *potential* public value of the information sought," *Davy v. CIA*, 550 F.3d at 1159 (emphasis added), the Court finds that this prong favors plaintiff. The D.C. Circuit noted on remand that "there is a cognizable public interest in learning how NIH handles complaints concerning animal abuse and misappropriation of federal research funds" and "in shedding light on NIH's investigatory processes." *PETA*, 745 F.3d at 542, 545. If on remand defendant had produced "documents showing that, in response to complaints filed against the named researchers, the agency conducted an investigation other than one targeting the researchers," *id.* at 545, then the litigation could potentially have shed light on both of those practices. The information sought also could have shed light on the way that NIH responds to FOIA requests generally. *See Negley*

*v. FBI*, 818 F. Supp. 2d 69, 75 (D.D.C. 2011) (the public benefit factor may be satisfied where the litigation results in the release of "the baseline method by which [an agency] will search for and respond to FOIA requests"). So the Court finds this element favors plaintiff.

Because the first prong favors NIH and the second prong favors PETA, the Court finds that on balance this factor is neutral.

B.  **Commercial Benefit to Plaintiff and Plaintiff's Interest in the Records Sought**

The "commercial benefit" and "plaintiff's interest" factors "are closely related and often considered together." *Tax Analysts*, 965 F.2d at 1095. They weigh against an award where the plaintiff "seeks disclosure for a commercial benefit or out of other personal motives." *Id*. The factors tend to "favor non-profit organizations . . . which 'aim to ferret out and make public worthwhile, previously unknown government information – precisely the activity that FOIA's fees provision seeks to promote.'" *Elec. Privacy Info. Ctr.*, 999 F. Supp. 2d at 69, quoting *Davy*, 550 F.3d at 1160.

NIH does not dispute that PETA obtained no commercial benefit from the litigation but contends that it "had sufficient private incentive to seek disclosure without an award of attorneys' fees" because plaintiff "admi[tted] that '[its] FOIA request was expressly aimed at ascertaining what, if any, action NIH had taken in response to [the August 2006 Letter].'" Def.'s Opp. at 24 (emphasis removed).

The Court finds that these factors favor plaintiff. Plaintiff is a non-profit public interest organization, *PETA*, 853 F. Supp. 2d at 149, and it was seeking documents from defendant "for public informational purposes" only. *Elec. Privacy Info. Ctr.*, 999 F. Supp. 2d at 69, quoting *Davy*, 550 F.3d at 1160; *see also Citizens for Responsibility & Ethics in Wash.*, 820 F. Supp. 2d at 45 (a non-profit plaintiff that "gathers information of potential interest to a segment of the public, uses [its] editorial skills to turn the raw materials into a distinct work, and distributes that work to an

audience," is "among those whom Congress intended to be favorably treaded under FOIA's fee provision.") (alteration in original), quoting *Davy*, 550 F.3d at 1161–62.  The Court does not agree with defendant that PETA's efforts to ascertain what action NIH had taken in response to the August 2006 Letter constitute interest for personal motives; on the contrary, the Court finds those efforts to be "for public informational purposes" and "the kind of endeavor for which a public subsidy makes some sense."  *Elec. Privacy Info. Ctr.*, 999 F. Supp. 2d at 69, quoting *Davy*, 550 F.3d at 1160.  Accordingly, the second and third prong favor plaintiff.

### C. Reasonableness of NIH's Position

Under the fourth factor, the Court assesses "whether the agency's opposition to disclosure had a reasonable basis in law" and "whether the agency [was] recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior."  *Davy*, 550 F.3d at 1162 (citations and internal quotation marks omitted).  The government's decision to withhold information may have a reasonable basis in law even if the information was ultimately not found to be exempt.  *See Negley*, 818 F. Supp. 2d at 76, citing *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979).

PETA argues that NIH was obdurate and recalcitrant because it "continued to assert non-existent personal privacy interests" throughout the litigation even though "it knew it had not received PETA's August 2006 [Letter] and hence had no records responsive to [the] July . . . 2007 FOIA request."  Pl.'s Appl. at 22 (emphasis removed) (alternation added).  Defendant responds that its *Glomar* response was reasonable, especially in light of the fact that this Court found for defendant and the D.C. Circuit found that "a *Glomar* response is warranted for the heartland of responsive documents."  Def.'s Opp. at 27, quoting *PETA*, 745 F.3d at 541.

The Court agrees with defendant.  Count II alleged that "[t]here is no statutory basis for NIH's wholesale refusal to process PETA's . . . requests for information *concerning investigations of particular recipients of federal funding*, or to refuse to disclose the information requested by

14

those requests." Compl. ¶ 26 (emphasis added). The Court interpreted the Second Request as seeking "documents concerning all NIH investigations into complaints regarding three specifically named researchers," and held that NIH's *Glomar* response was warranted for documents responsive to that request. *PETA*, 853 F. Supp. 2d at 149, 159. The D.C. Circuit found the Court's reading of the request to be "understandable," and it held that the *Glomar* response "would be fully warranted" if PETA's request was interpreted to be confined to records revealing the existence of an investigation of the three researchers. *PETA*, 745 F.3d at 544. Based on all of the rulings in this case, the Court does not find that NIH was obdurate or recalcitrant, and that it had a reasonable basis in law for its *Glomar* response.

### III. A Reasonable Fee Award is $22,724.03.

Upon determining that a plaintiff is both eligible for and entitled to a FOIA fee award, the Court must then determine whether the requested award is reasonable. *See* 5 U.S.C. § 552(a)(4)(E)(i) (providing for "*reasonable* attorney fees and other litigation costs") (emphasis added).

PETA calculated its fee application using *Laffey* rates.[5] Pl.'s Appl. at 26; First Meyer Decl. ¶ 9. It seeks $219,967.07 in attorneys' fees and $7,273.21 in costs, for a total of $227,240.28. Pl.'s Reply at 15–16 n.7. The application reflects fees and costs from both the District Court and Court of Appeals proceedings, as well as fees and costs incurred during remand and in preparing

---

5  Attorneys fees and costs are usually calculated by multiplying "the number of hours reasonably expended . . . by a reasonable hourly rate." *Elec. Privacy Info. Ctr.*, 999 F. Supp. 2d at 66, quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1323 (D.C. Cir. 1982). But in the case of public-interest lawyers, who do not have customary billing rates, courts in this circuit frequently use the "*Laffey* Matrix," first set forth in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). The *Laffey* Matrix is a schedule of fees based on years of attorney experience. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011), citing *Covington v. District of Columbia*, 57 F.3d 1101, 1105–11 (D.C. Cir. 1995).

the fee application itself. *See* Attach. 1 to First Meyer Decl. [Dkt. 39-9]; Decl. of Katherine A. Meyer (Apr. 13, 2015) [Dkt. # 44-3] ("Second Meyer Decl.") ¶¶ 1–2. Plaintiff states that the fees it seeks only reflect work litigating Count II. Pl.'s Reply at 8 ("PETA did not spend any time litigating Claims I and III, and hence is not asking for compensation for any such time.") (emphasis removed). Plaintiff also decreased its request by 25% to account for the fact that it did not prevail on part of its *Glomar* argument. Pl.'s Appl. at 27; First Meyer Decl. ¶ 8.

To decide what portion of attorneys' fees are recoverable, the Court considers "the relationship between the amount of the fee [requested] and the results obtained." *Elec. Privacy Info. Ctr.*, 999 F. Supp. 2d at 76, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court has discretion to adjust any request for attorneys' fees that is unreasonable on its face, and "[t]he reasonableness of a fee request must be evaluated in light of the results obtained." *Barnard v. DHS*, 656 F. Supp. 2d 91, 98 (D.D.C. 2009). The degree of plaintiff's success is the "most critical factor" in determining the reasonableness of a fee award. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *see also Hensley*, 461 U.S. at 440 ("the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."); *Judicial Watch*, 470 F.3d at 369 ("A plaintiff's overall success on the merits . . . must be considered in determining the reasonableness of a fee award.").

As explained above, PETA prevailed only on a narrow portion of the relief it requested. The complaint raised three counts, two of which were dismissed, and the dismissals were summarily affirmed. Plaintiff did not prevail on Count II at the trial level, and the District Court's ruling with respect to the bulk of records called for under a fair reading of the request in question was also upheld. It prevailed only to the extent the request could be broadly read to seek other

documents.  And even with respect to that category of documents, it turned out there were no responsive documents.  Def.'s Opp. at 12; Cornell Decl. at ¶¶ 4–8.

Given the narrow slice of relief that PETA obtained, the Court finds that a reasonable fee award is ten percent of PETA's claimed amount, or $22,724.03.  *See, e.g.*, *Piper v. DOJ*, 339 F. Supp. 2d 13, 24–25 (D.D.C. 2004) (decreasing a fee award by 50% because the plaintiff prevailed only in part).

## CONCLUSION

For the reasons set forth above, it is

**ORDERED** that PETA's application for attorneys fees and costs [Dkt. # 39] is granted in part and denied in part.  It is

**FURTHER ORDERED** that defendant shall pay plaintiff $22,724.03 in attorneys' fees and expenses.

/s/ Amy B Jackson
_____
AMY BERMAN JACKSON
United States District Judge

DATE: September 11, 2015